[No. A022784. First Dist., Div. One. June 25, 1985.]

JOHN V. FOX, Plaintiff and Appellant, v.
SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND
ARBITRATION BOARD, Defendant and Respondent;
MAJORIE MAXWELL et al., Real Parties in Interest and Respondents.

**COUNSEL**

Robert J. Valkevich and Reuben, Quint & Valkevich for Plaintiff and Appellant.

George Agnost, City Attorney, and Kathryn A. Pennypacker, Deputy City Attorney, for Defendant and Respondent.

No appearance for Real Parties in Interest and Respondents.

## Opinion

**RACANELLI, P. J.**—Landlord John V. Fox appeals from the denial of his petition for writ of mandamus following the decision of the San Francisco Residential Rent Stabilization and Arbitration Board (Board) limiting rent increases to certain tenants. We affirm the judgment for the reasons which follow.

### Factual Background

Fox purchased the 12-unit building at 3320 Octavia Street in November 1981 and promptly instituted substantial rent increases.

In January 1982, the tenants' challenge to all but one of the proposed increases was upheld by the Board's hearing officer because rent increases had been received within the previous year.

In June 1982, another hearing was held on landlord's petitions filed by Fox for rent increases for seven of his tenants.

On August 17, 1982, following remand to the hearing officer for technical corrections, the Board reissued the hearing officer's initial June decision allowing rent increases for those tenants who had not received increases during the previous 12 months, subject to the limits prescribed under the Board's rules and regulations, as reflected in the margin.[1]

Fox again appealed that decision to the Board alleging "extraordinary circumstances" justifying larger increases than were granted. Following an

---

[1]Rent increases were granted as follows:

| Tenant | Initial Rent/Date | 1982 Rent | Increase | New Rent | |
|--------|-------------------|-----------|----------|----------|---|
| Heath | $100/1965 | $ 185 | $ 51.79 | 236.79 | * |
| Maxwell | 125/1969 | 180 | 54.00 | 234.00 | ** |
| Nelson | 180/1975 | 235 | 41.72 | 276.72 | * |
| Kennedy | 140/1964 | 185 | 55.50 | 240.50 | ** |
| Ellison | 50/1953 | 185 | 12.95 | 197.95 | * |
| Noelke | 300/9/80 | 321 | 22.47 | 343.47 | |
| Simon | 350/1/81 | 375 | 26.25 | 401.25 | |

*Increase limited by former rule 6.10(a)(1) [Rules and Regulations, April 1984]
**Increase limited by former rule 6.10(a)(3) [Rules and Regulations, April 1984]

appeal hearing, the Board rendered its decision upholding the hearing officer's determination.

On appeal to this court, Fox challenges certain of the Board's rules and regulations establishing limits on allowable rent, particularly for long-term tenants.

PROCEDURAL AND FACTUAL BACKGROUND

We first undertake an examination of the comprehensive local legislative and administrative scheme providing for rent control and stability.

The San Francisco rent ordinance (San Francisco Administrative Code Chapter 37, to which all further statutory references apply unless otherwise indicated) was enacted originally by the Board of Supervisors in 1979 and amended in 1982 and 1984 for the purpose of addressing the City's housing shortage and especially tenants' hardships. (§ 37.1(b)(2) & (5).)[2] Respondent Board was created "in order to safeguard tenants from excessive rent increases and, at the same time, to assure landlords fair and adequate rents consistent with Federal Anti-Inflation Guidelines." (§ 37.1(b)(6).) The ordinance explicitly authorizes the board to "[p]romulgate policies, rules and regulations to effectuate the purposes of [the ordinance]" and to "[c]onduct rental arbitration hearings . . . ." (§ 37.6(a) & (c).) Furthermore, "[i]n accordance with such guidelines as the board shall establish, the board and designated hearing officers shall have the authority to arbitrate rental increase adjustments . . . ." (§ 37.8(a).)

The ordinance sets forth certain regulations governing rent increases: landlords may raise rents for existing tenants by a specified figure ranging from 4 to 7 percent annually (§ 37.3 A(a)(1)); certain costs may be "passed through" or certified as rent increases above 7 percent (utility charges, capital improvements, rehabilitation work) (§§ 37.2(1), 37.3(b)); and upon vacancy, the rent which may be charged is without limit. The ordinance also provides a procedure by which a landlord may petition for a larger rent increment based on increased operating costs (§ 37.8(b) & (c)), the specific factors to be considered (§ 37.8(e)(4)(A)) and "such [other] relevant factors as the board shall specify in rules and regulations." (§ 37.8(e)(4)(E).)

Acting under such legislative authority, the Board conducted public hearings as provided by section 3.500(a) of the San Francisco Charter culmi-

---

[2]The Administrative Code references are to the statute as amended April 1, 1982.

nating in the adoption of rule 6.10(a) dealing with justified allowable increases.[3] That rule is the focus of appellant's challenge on appeal.

### SCOPE OF REVIEW

■ The scope of our review of an administrative agency's regulations is limited: we consider whether the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose. (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].) As a general proposition, administrative regulations are said to be "shielded by a presumption of regularity" (*Schenley Affiliated Brands Corp.* v. *Kirby* (1971) 21 Cal.App.3d 177, 182 [98 Cal.Rptr. 609]) and presumed to be "*reasonable and lawful.*" (*California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313].) The party challenging such regulations has the burden of proving otherwise. (*Freeman* v. *Contra Costa County Water Dist.* (1971) 18 Cal.App.3d 404, 408 [95 Cal.Rptr. 852].) We discuss the contentions on appeal in the light of such governing principles.

### I

■ Appellant initially claims that respondent Board abused its discretion by limiting the allowable rent increase under regulations unauthorized by the rent ordinance.[4] While acknowledging the Board's "broad discre-

---

[3]At the time of the hearing, rule [§] 6.10 provided: "(a) A rent increase above the limitations of Section 37.3 of the Ordinance, may be considered justified if it is found that over the twelve (12) months preceeding [sic] the date of filing of the petition the aggregate operating and maintenance expenses (including but not limited to real estate taxes, water, sewer service charges, janitorial service, refuse removal, elevator service, security system and debt service) have increased at a rate greater than the percentage increase in the CPI over the same period.

"Except in extraordinary circumstances, the following limits apply to such increases:

"(1) No rent increase shall be allowed which causes a tenant's rent to exceed 75% of the percentage increase in the CPI from the time of the tenant's initial occupancy until June 14, 1979 and 7% thereafter;

"(2) No rent increase shall be allowed which causes a tenant's rent to exceed comparable rents in the same general area (as defined in Section 6.11); and

"(3) No rent increase shall exceed 30% of a tenant's base rent. . . ."

Subsequently, rule 6.10 has been amended to delete the challenged sections and to replace them with a provision that limits any justified increase to an additional 7 percent. The discussion herein considers rule 6.10 as it existed in June 1982.

[4]Throughout his brief appellant insists that his substantiated increase in operating costs automatically "justified" the requested rent increases. Appellant misconstrues both the ordinance and rule 6.10: a rent increase "*may* be considered justified" if operating costs and debt service have increased at a rate greater than the percentage increase in the CPI. Nothing in either provision mandates an automatic proportionate increase based on expenses. The "pass-through" provisions are clearly limited to utilities, capital investment and rehabilitation work. (See §§ 37.2(1), 37.3(b).)

tion" in promulgating rules and regulations, he asserts that the limitations imposed by rule 6.10(a)(1) and (3) subvert the balancing process intended by the Board of Supervisors by imposing a ceiling not contemplated under the ordinance. These assertions are demonstrably erroneous.

In enacting such rules and regulations, the Board is empowered to " 'fill up the details' " of the enabling legislation. (*Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485, 492-493 [234 P.2d 26].) The court's role is to decide whether in enacting the specific rule the Board reasonably interpreted the legislative mandate. (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 657 [128 Cal.Rptr. 881, 547 P.2d 993].) Herein, that explicit mandate is to protect tenants, especially from *excessive* rent increases. (§ 37.1(b)(6).) The balancing process is not eliminated, as appellant contends; exception is permitted for "extraordinary circumstances."[5]

Nor is any merit found in appellant's contention that the 7 percent increase ceiling provided under the ordinance precluded the Board from establishing any other ceiling in its rules and regulations. Such limitations on new rent as a percentage of previous rent in specific cases are the obvious product of the Board's decision to strike a reasonable balance between a landlord's increased costs of operation and maintenance and equitable rent increases which tenants may be reasonably expected to bear. Such finite limitations on allowable increases would tend to benefit long-term, potentially lower or fixed income tenants while providing landlord relief in an exceptional case manifesting extraordinary circumstances. In promulgating such proportional limitations, the Board acted well within the scope of its power "to safeguard tenants from excessive rent increases" while assuring landlords fair and adequate rents. (§ 37.1(b)(6).)

## II

Appellant next argues that the limitations fixed by the rule are arbitrary and capricious and thus constitute an abuse of discretion. Neither rules 6.10(a)(1) nor 6.10(a)(3), he maintains, are reasonably derived from appropriate facts or reliable statistics. The argument does not survive critical analysis.

Under rule 6.10(a), a landlord may request a rent increase above the 7 percent allowed annually by substantiating increased costs in the listed category of operating and maintenance expenses. If the increased expenses are

---

[5]Indeed, appellant presented a claim of extraordinary circumstances which the Board rejected on October 5, 1982. Appellant's omission to recount evidence in the record supporting his claim forecloses review of the Board's decision on appeal. (*Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 874 [105 Cal.Rptr. 395].)

found to be adequately supported and justified (see § 37.8(e)(4)), such expenses may be allocated among the tenants as increased rent, subject to prescribed limitations. Rule 6.10(a)(1) restricts a rent increase to a maximum of 75 percent of the percentage increase in the CPI from the time of initial occupancy until June 14, 1979, and 7 percent thereafter.[6] According to the declaration of the executive director of the Board, this formula was derived using the CPI as the standard of measurement of the mean increase in rents before the 1979 rent ordinance with the 75 percent maximum increment attributable to the residential rent component of the CPI. We cannot conclude as a matter of law that this calculation, relating allowable increases to tenants' years of residency, initial rent and the impact of inflation on residential rent, is either unreasonable or inequitable—especially in regard to long-term tenants such as the Ellisons who have lived in their apartment for 30 years. (See fn. 1, p. 653, *ante.*)

Rule 6.10(a)(3) imposes an absolute ceiling limiting a rent increase to a maximum of 30 percent of a tenant's base rent, subject, however, to the noted exception of extraordinary circumstances.

In light of the Board's legislative imperative to safeguard tenants from exorbitant rent increases while assuring landlords of a fair and adequate rental return, we conclude that the challenged regulations are reasonable and thus invulnerable to a claim of being arbitrary or capricious. (Cf. *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 688, fn. 44 [209 Cal.Rptr. 682, 693 P.2d 261], jur. noted (1985) — U.S. — [— L.Ed.2d —, — S.Ct. —]; *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside* (1984) 157 Cal.App.3d 887, 893-894 [204 Cal.Rptr. 239].)

III

Appellant's final challenge is directed at the 7 percent limit on two of the rent increases (Noelke and Simon) notwithstanding documented cost increases of $118 per unit which the hearing officer allegedly refused to factor into the balance equation required by the ordinance. The challenge finds no support in the record.

Both the ordinance and the implementing rules and regulations empower the hearing officer to consider such documented increases along with other "relevant factors" in determining whether a rent increase is justified. The past history of rental increases is specified as a relevant factor.

---

[6]This provision limited the increase allocated to tenants Heath, Nelson and Ellison. (See fn. 1, p. 653, *ante.*)

(§ 37.8(e)(4)(B).) The two units in question had recently been on the market (in 1980 and 1981) without controls attached to the initial rent fixed upon vacancy. Each anniversary date brought the full 7 percent allowable rent increase. Thus, even a substantial increase in financial costs does not automatically qualify on a dollar-for-dollar "pass-through" basis as provided in other parts of the ordinance. Presumably appellant was aware of the current rents, length of tenancies and the existence of the rent control ordinance at the time he purchased the rental property. ■ He cannot now expect the Board to make special allowances simply because he is unable to pass on to his tenants his high finance charges in connection with the purchase.[7]

Judgment affirmed.

Newsom, J., and Holmdahl, J., concurred.

---

[7]Since appellant is not a "successful party" herein, it is unnecessary to discuss appellant's claim for statutory attorney fees under the "private attorney general" doctrine. (Code Civ. Proc., § 1021.5.)