[No. A055022. First Dist., Div. Five. Apr. 2, 1992.]

DA VINCI GROUP, Plaintiff and Appellant, v.
SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND
ARBITRATION BOARD, Defendant and Respondent;
TENANTS OF 731 FLORIDA STREET, Real Party in Interest and
Respondent.

**COUNSEL**

Duncan & Hirshbein and Barry A. Hirshbein for Plaintiff and Appellant.

Louise H. Renne, City Attorney, and Kathryn A. Pennypacker, Deputy City Attorney, for Defendant and Respondent.

Marc Janowitz, Mark Bogatin and Larry Beach Becker for Real Party in Interest and Respondent.

OPINION

KING, Acting P. J.—In this case we hold a commercial warehouse built in 1905, used residentially since 1980, subsequently renovated and granted a certificate of occupancy in 1986, does not come within the San Francisco Residential Rent Stabilization and Arbitration Ordinance's "new construction" or "substantial rehabilitation" exemptions. In addition we hold the Ordinance does not authorize the rent board to award rebates of past overpayments based on null and void rent increases.

Landlord Da Vinci Group appeals from an order denying its petition for writ of mandate and thereby affirming the decision of the San Francisco Residential Rent Stabilization and Arbitration Board that real property located at 731 Florida Street is not exempt from the Residential Rent Stabilization and Arbitration Ordinance (Ordinance) (S.F. Admin. Code, ch. 37), and that tenant William McDonald is entitled to a refund of rent overpayments.

Based on a finding that the City and County of San Francisco was suffering from a shortage of decent, safe, sanitary, affordable housing (§ 37.1, subds. (b)(1) & (2)), the Ordinance imposed rent increase limitations (§ 37.3, subd. (a)) on tenants occupying all residential dwelling units with certain enumerated exceptions (§ 37.2, subd. (p)). In order "to safeguard tenants from excessive rent increases and, at the same time, to assure landlords fair and adequate rents" (§ 37.1, subd. (b)(6)), the Ordinance established a rent board with the power, among other things, to promulgate policies, rules and regulations to effectuate its purposes, and to conduct rent arbitration hearings (§ 37.6, subds. (a) & (c)).

The subject property was built in 1905 as a trunk manufacturing facility/warehouse. It was purchased by Richard and Barbara Marion in July 1980 for $320,000, and managed by Richard Marion until his death in 1987. At the time of this purchase it was a multitenant warehouse with no certificate of occupancy. In September 1980, McDonald moved into a unit whose previous tenant had advertised it as a live-in warehouse. At that time there were several groups of tenants living and working on the premises. In June 1981, the bureau of building inspection issued a warning that the property had been changed to apartments without a permit. The Marions spent a stipulated $240,000 on improvements and received a certificate of occupancy on February 7, 1986. Da Vinci purchased the building in May 1988 for $875,000.

On September 7, 1988, McDonald filed a petition with the rent board alleging unlawful rent increases dating back to April 1982. Da Vinci argued

the property was exempt from rent control under section 37.2, subdivision (p)(6), of the Ordinance. A hearing officer found the property did not fall within the so-called "new construction" exemption, determined the current lawful rent, and ordered a refund of rent overpayments amounting to $16,827.32. On appeal, the board reduced the amount to $12,864.45 "in the interest of fairness based on the equities in this case."

On May 30, 1989, Da Vinci filed a petition to obtain "substantial rehabilitation" exemption under section 37.2, subdivision (p)(7), of the Ordinance or, in the alternative, to pass through to tenants the cost of capital improvements made by the former owners (Ord., § 37.3, subd. (a)(3)). A hearing officer denied the exemption and certified the pass-through.

On August 31, 1990, Da Vinci filed a petion for writ of mandate (Code Civ. Proc., § 1094.5) ordering the board to set aside its decisions denying exemption and awarding rent rebates. A hearing was held on June 12, 1991, and on July 22 the trial court denied the petition.

I

On appeal, Da Vinci renews its claim to exemption from rent control under two of the Ordinance's provisions. ■ "The scope of an exemption provided by statute is a question of statutory interpretation and also one of law." (*Verdugo Woodlands Homeowners etc. Assn.* v. *City of Glendale* (1986) 179 Cal.App.3d 696, 702 [224 Cal.Rptr. 903].) "Exceptions to the general rule of a statute are to be strictly construed. In interpreting exceptions to the general statute courts include only those circumstances which are within the words and reason of the exception. . . . One seeking to be excluded from the sweep of the general statute must establish that the exception applies." (*Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762, 767 [195 Cal.Rptr. 417].) "The construction of a municipal ordinance is governed by the same rules as the construction of statutes." (*City of Los Angeles* v. *Los Olivos Mobile Home Park* (1989) 213 Cal.App.3d 1427, 1433 [262 Cal.Rptr. 446].)

A.

■ Da Vinci first contends its property comes within Ordinance section 37.2, subdivision (p)(6)'s exemption for "rental units located in a structure for which a certificate of occupancy was first issued after the effective date of this ordinance." At first glance, this appears to be true. ■ However, the primary principle of statutory construction "requires us to determine the objective of the Legislature and to interpret the law so as to give effect to

that objective even when such an interpretation appears to be at odds with conventional usage or the literal construction of the statutory language." (*Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141].) "Despite the general rule that ambiguity is a condition precedent to interpretation, the literal meaning of the words of a statute may be disregarded to . . . give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole." (*East Peninsula Ed. Council, Inc.* v. *Palos Verdes Penninsula* [*sic*] *Unified School Dist.* (1989) 210 Cal.App.3d 155, 166 [258 Cal.Rptr. 147].)

██ "The contemporaneous construction of a new enactment by the administrative agency charged with its enforcement . . . is entitled to great weight" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388 [241 Cal.Rptr. 67, 743 P.2d 1323]) and "will not be overturned unless clearly erroneous" (*DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 62 [13 Cal.Rptr. 663, 362 P.2d 487].) Less than two months after the Ordinance took effect, the board adopted Rules and Regulations[1] exempting "newly constructed rental units for which a certificate of occupancy was first issued after June 13, 1979" (Rules & Regs., § 1.17, subd. (6), now § 1.15, subd. (f)). ██ In January 1984, the Board adopted an artist live-work policy extending the "new construction" exemption to converted warehouses with new certificates of occupancy, but "only where there has been no residential use since the enactment of the Ordinance." The board argues Da Vinci's property does not qualify for exemption under its interpretation of Ordinance section 37.2, subdivision (p)(6). Da Vinci claims the board's rules impermissibly expand the scope of the Ordinance (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1389) and its live-work policy directly conflicts with it.

██ "The scope of our review of an administrative agency's regulations is limited: we consider whether the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose." (*Fox* v. *San Francisco Residential Rent etc. Bd.* (1985) 169 Cal.App.3d 651, 655 [215 Cal.Rptr. 565].) "In enacting such rules and

[1]The record contains a copy of the Rules and Regulations as originally adopted, August 10, 1979. At our request, four amended versions in effect at various times during this litigation have been supplied, of which we take judicial notice (Evid. Code, § 452, subd. (b)). Since 1987: section 1.17, subdivisions (1)-(7), defining "rental units" and enumerating exceptions, has been denominated section 1.15, subdivisions (a)-(g); section 1.18, defining "substantial rehabilitation," has been section 1.16; part 9 on Capital Improvements and Rehabilitation Work has been part 7; part 4, Tenant Petition for Arbitration Hearing, has become part 10, and the grounds have been changed; and part 9, Tenant Summary Petitions, has been added.

regulations, the Board is empowered to fill up the details of the enabling legislation. [Citation.] The court's role is to decide whether in enacting the specific rule the Board reasonably interpreted the legislative mandate." (*Id.* at p. 656, internal quotation marks omitted.)

The board's original and consistent determination that this exemption includes only "newly constructed" rental units is worthy of judicial deference because it comports with the Ordinance's major goal of easing the housing shortage by encouraging creation of new residential rental units where there were none before. The 1986 certificate of occupancy in this case created legal residential units where there were illegal ones before. Legalizing de facto residential use does not enlarge San Francisco's housing stock.

Similarly, the board's artist live-work policy effectuates the Ordinance's purpose. As the board explained, "It has always been our policy to (i) protect existing tenants in place and (ii) provide an incentive to landlords who wish to convert buildings to *new* live/work space." (Italics in original.) While restructuring a nonresidential warehouse for live-work use creates new residential units, i.e., additional housing, remodeling a warehouse already inhabited, albeit illegally, by residential tenants does not. Moreover, as the hearing officer stated, "The Rent Board ha[s] held consistently that rental units are subject to the jurisdiction of the Rent Ordinance so long as a tenant resides there, whether the unit is legal or illegal, and whether or not it is also used for commercial purposes. To permit landlords to rent out illegal units but to avoid the obligations imposed by the Ordinance is contrary to the purpose and intent of the Ordinance." Finally, to the extent the Ordinance's "explicit mandate is to protect tenants, especially from excessive rent increases" (*Fox v. San Francisco Residential Rent etc. Bd., supra,* 169 Cal.App.3d at p. 656, italics omitted), a policy which removes such protection from tenants already in occupancy is contraindicated. As the board puts it, "Conversion through the permit process of illegal units to legal units by landlords who allowed the illegal residential use in the first place cannot be an eviction tool to defeat the purpose of the Rent Ordinance."

Da Vinci's units were not newly constructed, nor was the building restructured to permit new residential use. Existing residential use was made legal by bringing the building up to code and obtaining a certificate of occupancy. While this is a commendable undertaking, it does not bring the premises within the Ordinance's "new construction" exemption.

B.

Da Vinci next contends its property comes within section 37.2, subdivision (p)(7)'s exemption for "dwelling units in a building which has

undergone substantial rehabilitation after the effective date of this ordinance." The Ordinance defines "substantial rehabilitation" as the "renovation, alteration or remodeling of residential units of 50 or more years of age which have been condemned or which do not qualify for certificates of occupancy or which require substantial renovation in order to conform the building to contemporary standards for decent, safe and sanitary housing." (§ 37.2, subd. (q).)

The hearing officer found that despite the age of the building itself, it was not composed of 50-or-more-year-old residential units. Da Vinci argues for a broader construction of the exemption based on the Ordinance's alleged purpose to promote the development of "new legal residential dwelling units which me[e]t the standards of the San Francisco Building Code." As previously noted, exemptions must be construed narrowly, not broadly. Moreover, to the extent the Ordinance aims at encouraging landlords to get and keep their buildings up to code, this is accomplished by the passthrough mechanism (Ord. § 37.7, Rules & Regs., pt. 7) of which Da Vinci has taken full advantage.

As the hearing officer noted, the applicable version of Rules and Regulations section 1.16 defines "substantial rehabilitation" as "the renovation, alteration or remodeling of a *building containing essentially uninhabitable residential rental units of 50 or more years of age* which require substantial renovation in order to conform to contemporary standards for decent, safe and sanitary housing in place of essentially uninhabitable buildings." (Italics added.) The italicized language reiterates that it is the residential units, not the building, which must be 50 or more years of age. It also clarifies the intention to encourage landlords not merely to bring their buildings up to code (to create better housing), but to create new residential units where, essentially, there were none before (to create additional housing).[2] Like the "new construction" exemption, this section cannot be applied to residential units where tenants are already in occupancy without contravening the Ordinance's explicit mandate to protect tenants from excessive rent increases.

Da Vinci's assertion of an "impossible quandary" or a "Catch-22" assumes a right to exemption from rent control, if not under one provision then under another. There is no such general right. The board *can*, in this context, "have it both ways." The building in question contains neither newly constructed residential units nor residential units 50 or more years of age, within the meanings of the Ordinance and the applicable Rules and Regulations.

---

[2]Contrary to Da Vinci's suggestion, this exemption also provides an incentive for landlords to preserve what real party McDonald calls "San Francisco's architectual [*sic*] heritage" rather than demolishing and rebuilding for a "new construction" exemption.

## II

█ Finally, Da Vinci contends that even if its building is subject to rent control, there was no authority for the Board to award McDonald retroactive rent rebates.

Any rent increase which does not conform with the provisions of section 37.3 (Rent Limitations) is null and void. (Ord., § 37.3, subd. (b)(6); Rules & Regs., § 9.10, subd. (c).) There is no explicit provision for rebates of past overpayments based on null and void rent increases. The hearing officer found McDonald established unlawful rent increases "pursuant to Ordinance Section 37.3(a) [Rent Increase Limitations for Tenants in Occupancy] and Rules and Regulations Section 9.10 [Grounds for Summary Petitions]." Neither of these sections prescribes a rebate of rent overpayments.

The hearing officer cited Ordinance section 37.8, subdivision (e)(7), which provides, "Upon finding that all or any portion of the rent increase is or is not justified, the hearing officer may order payment or refund of all or a portion of that cumulative amount . . . or may order the amount added to or offset against future rents . . . ." This remedy is found in section 37.8, Arbitration of Rental Increase Adjustments, subdivision (b)(2)(A), of which provides, "Notwithstanding Section 37.3 [Rent Limitations], tenants . . . may request arbitration hearings where a landlord has substantially decreased services without a corresponding reduction in rent and/or has failed to perform ordinary repair and maintenance under state or local law and/or has failed to provide the tenant with a clear explanation of the current charges for gas and electricity passed through to the tenant." (See also, Rules & Regs. pt. 10, Tenant Petition for Arbitration.) This section says nothing about null and void rent increases or overpayments.

The petition McDonald filed, entitled "Tenant Petition for Arbitration," lists four possible reasons for filing. Three of them—decreased services, failure to repair and maintain, incorrectly calculated passthrough—derive from the just-discussed Ordinance section 37.8, which governs tenant requests for arbitration (subd. (b)(2)(A)) and prescribes rent refunds to implement arbitration decisions in favor of the tenant (subd. (e)(7)). McDonald checked off the fourth reason, "The landlord has unlawfully increased my rent over the allowable limits after April 1, 1982." Neither the Ordinance nor the Rules and Regulations specify this as a grounds for arbitration and refund. The hearing officer found McDonald had established a null and void

rent increase for which there is no rebate prescribed in either the Ordinance or the Rules and Regulations.[3]

The only way for McDonald to recoup past overpayments based on null and void rent increases seems to be that provided by section 37.11A of the Ordinance, which states, "Whenever a landlord charges a tenant a rent which exceeds the limitations set forth in this chapter . . . the tenant may institute a civil proceeding for money damages." Although, by its terms, this remedy is additional to "any other existing remedies which may be available to the tenant," Da Vinci correctly points out there are no "other existing remedies" available to McDonald.

Since we hold there was no administrative basis for McDonald's rent rebate, we need not consider Da Vinci's contentions that the rebate was also precluded by the statute of limitations (Code Civ. Proc., § 338, subd. (a)), laches, and/or considerations of "fundamental fairness."

The judgment granting McDonald rent rebates is reversed. In all other respects, the judgment is affirmed. Da Vinci Group shall recover its costs on appeal.

Haning, J., and Rouse, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 1992.

---

[3]This does not mean, as the board suggests, that a tenant cannot complain about null and void increases or that landlords can impose with impunity any increase not specified as a basis for a tenant *arbitration* petition. Part 9 of the Rules and Regulations permits a tenant to file a *summary* petition "if the landlord gives a rent increase which fails to comply with the provisions set forth in Section 37.3 of the Ordinance" (§ 9.10, subd.(a)), and repeats the Ordinance's null and void provision (§ 9.10, subd. (c)). This seems to provide summary adjudication where tenants are notified of impending rent increases they believe to be null and void. As already noted, it does not prescribe a rebate or offset of past overpayments. This limited application is further implied by the fact that the Ordinance's null and void provision, entitled "Nonconforming Rent Increases," is a subdivision of the section entitled "Notice of Rent Increase for Tenants in Occupancy" (§ 37.3, subds. (b) & (b)(5)).

*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.