Filed 5/23/22  SLS Venice Holdings, LLC v. City of L.A. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SLS VENICE HOLDINGS, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent. | B309503 <br><br> (Los Angeles County Super. Ct. No. 19STCP01989) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Law Offices of Thomas A. Nitti, Thomas A. Nitti and Andrew B. Kavros for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Chief Assistant City Attorney, and Maureen Home, Deputy City Attorney, for Defendant and Respondent.

SLS Venice Holdings, LLC (SLS) contests the application of the City of Los Angeles's (City) Rent Stabilization Ordinance (RSO) (L.A. Mun. Code, § 151.00 et seq.)[1] to a four-unit apartment house in the City. SLS does not dispute that two of the four rental units were subject to the RSO because SLS acknowledges the RSO applies to any rental unit within a residential structure that was built before 1978. Instead, SLS's challenge turns on whether the RSO applies to the two units that were added to the two undisputed RSO units to create the four-unit apartment house. The agency charged with administering the RSO, the Los Angeles Housing and Community Investment Department[2] (HCID), determined the RSO applies to the entire apartment house. SLS filed a traditional and administrative petition for writ of mandate contending the HCID should exempt the two added units as new construction as the agency had in prior years. The trial court disagreed with SLS, entered judgment denying the writ petition, and SLS timely appealed. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    The City's RSO

The City's RSO, effective May 1, 1979, was enacted to level the playing field for individuals in landlord-tenant relationships: It protects tenants from excessive rent increases and gives a defense to eviction and affords landlords a fair and reasonable return on their investments. (§ 151.01; *Palos Verdes Shores Mobile Estates, Ltd. v. City of Los Angeles* (1983) 142 Cal.App.3d 362, 365.) The RSO has two primary components: It regulates rent increases that may be imposed

---

[1] Undesignated code sections are to the Los Angeles Municipal Code.

[2] The HCID (or HCIDLA) is a 2013 merger of the Los Angeles Housing Department and the Community Development Department. (<https://housinginnovation.co/collaborative/hcidla> [as of April 13, 2022], archived at <https://perma.cc/4BBQ-6TTL>.) Although portions of the record make reference to the Los Angeles Housing Department or LAHD as it was known at the time, for clarity and consistency we denote the agency as the HCID throughout this opinion.

2

on renters of RSO properties and requires evictions to be based on "just cause." (See §§ 151.04 [restriction on rents], 151.06 [rent increases], 151.09 [evictions].) The HCID administers and enforces the RSO. (§ 151.02.)

## A. "Rental Units" Subject to the RSO

The RSO applies to all "rental units" in the City, unless a property owner demonstrates the application of an enumerated exemption. (§§ 151.02, 151.05.G; see *Da Vinci Group v. San Francisco Residential Rent etc. Bd.* (1992) 5 Cal.App.4th 24, 28 [" 'Exceptions to the general rule of a statue are to be strictly construed. . . . One seeking to be excluded from the sweep of the general statute must establish that the exception applies' "].)

The RSO defines "rental units" as "[a]ll dwelling units, efficiency dwelling units, guest rooms and suites, . . . and all housing accommodations as defined in Government Code section 12927, and duplexes and condominiums in the City of Los Angeles, rented or offered for rent for living or dwelling purposes." (§ 151.02.) Government Code section 12927, subdivision (d) defines a " 'Housing accommodation,' " in pertinent part, as "any building, structure, or portion thereof that is occupied as, or intended for occupancy as, a residence by one or more families and any vacant land that is offered for sale or lease for the construction thereon of any building, structure, or portion thereof intended to be so occupied."

## B. The New Construction Exemption

The sixth of 13 exemptions to application of the RSO is the "new construction exemption." It states: "Housing accommodations, located in a structure for which the first Certificate of Occupancy was issued after October 1, 1978, are exempt from the provision of this chapter. If the structure was issued a Certificate of Occupancy, including a Temporary Certificate of Occupancy, on or before October 1, 1978, the housing accommodation(s) shall be subject to the provisions of this chapter. If the property was issued a building permit for residential purposes at any time on or before October 1, 1978, and a Certificate of Occupancy for the building was never issued or was not issued until

3

after October 1, 1978, the housing accommodation shall be subject to the provisions of this chapter." (§ 151.02.)

A certificate of occupancy must be acquired before a structure can be used or occupied in the City. (§§ 12.26.E, 91.109.1, 91.109.3, 91.109.4.) "When a building is constructed, added on to, or altered, a certificate of occupancy is generated at the conclusion of all inspections to certify that the building meets local building code requirements for occupancy." (*Burien, LLC v. Wiley* (2014) 230 Cal.App.4th 1039, 1047.) Hence, more than one certificate of occupancy may be obtained over time depending upon whether additions or alterations were made. (§ 91.109.)

### C. Applying for an RSO Exemption

Owners of rental property must annually register their rental units with the HCID and pay a registration fee based on the number of rental units. (§ 151.05.A.) Each year the HCID sends invoices to the owners for this purpose. (§ 151.05.B.) In response, an owner may request the HCID to review the assessment, including the number of rental units the HCID requires to be registered. Department-approved forms are available for this purpose and are to be submitted with any supporting documentation and a declaration stating the fact upon which the requested exemption rests. (§ 151.05.G.) When a review is requested, the HCID investigates the applicability of the RSO to the property by researching property records. The results of the investigation, known as a determination, are sent to the property owner. (§ 151.05.G.) A property owner may also seek a "temporary exemption" from the RSO's registration requirement and payment of fees. (§ 151.05.G.)

### II. The Sixth Avenue Property

SLS purchased the rental property located at 617 Sixth Avenue in Los Angeles (Sixth Avenue property) in April 2019. The Sixth Avenue property consisted of a two-story, four-unit residential "apartment house," with two units on the ground floor and two units on the upper floor. The two ground-floor units were called "unit A" and "unit C" and the two upper-floor units were called "unit B" and "unit

4

D."  Although property records describe the property as an "apartment house," units A and C were separated by a four-foot walkway from units B and D.

The upper-floor units B and D were originally built in 1949 as two single-family dwellings located at 2516 Washington Boulevard and 2522 Washington Boulevard, respectively.  The certificates of occupancy for both dwellings were first issued in 1949.  In 1985, the two dwellings were moved to the Sixth Avenue property and elevated as upper-floor units B and D, under which ground-floor units A and C were built in 1985–1986 to complete the four-unit apartment house.  A certificate of occupancy was issued for the apartment house in March 1986.

## III.   The Administrative Proceedings

Since at least 2005 and for multiple years, the owners of the Sixth Avenue property had registered the apartment house pursuant to the RSO.  In December 2008, the owner of the property requested the HCID to determine whether the new construction exemption applied to all four units of the apartment house.  The HCID determined the property "contains a combination of both RSO and non-RSO rental units:"  The relocated upper-floor units for which certificates of occupancy were issued in 1949 were subject to rent control, but the ground-floor units for which a certificate of occupancy was issued after 1978 (in 1986) were exempt as new construction.  A determination letter was sent to the owner in 2009.

In 2012, another request from the Sixth Avenue property owner to exempt all four units from the RSO led to another review by the HCID.  The agency then confirmed its earlier determination that only the two ground-floor rental units were exempt as new construction.

In February 2019, Stacey Sobel telephoned the HCID, identified herself as the current owner of the Sixth Avenue property, and claimed the registration fee was mistakenly assessed on ground-floor units A

5

and C.[3]  The HCID followed up with a review of the 2009 and 2012 HCID determinations, property records, and other pertinent documents and issued a new determination letter denying the new construction exemption for the apartment house.

The February 20, 2019 letter summarized the history of the Sixth Avenue property:  "Property records indicate that two Single Family Dwellings received an original Certificate of Occupancy . . . on October 26, 1949.  Subsequently, [a] Certificate of Occupancy . . . was issued on March 21, 1986, for relocating the two Single Family Dwellings to 617 S. 6th Ave. and building a 2 unit attached addition creating a 4 unit Apartment.  Therefore, effective [in] 1986, the 4 units are subject to all the provisions of the RSO."[4]  The letter also explained that "it is the original Certificate of Occupancy for a structure issued by the City of Los Angeles [in 1949] which is relevant to the determination of whether or not a rental unit is subject to the RSO, regardless of whether additional Certificates of Occupancy may have been issued for remodeling or additions to the buildings containing the rental unit(s)."  Finally, the letter stated that its revised determination superseded the two earlier determinations.  Nothing in the record shows SLS responded to this letter with documents or other materials.

## IV.    The Writ Proceedings

On May 21, 2019, SLS filed a "verified petition for writ of mandate and complaint for declaratory relief."  In its petition, SLS requested relief pursuant to Code of Civil Procedure section 1094.5 (which allows for a writ of administrative mandate) or, alternatively,

---

[3] According to a Statement of Information filed with the California Secretary of State on February 11, 2019, Sobel was the manager of SLS, which purchased the Sixth Avenue property on April 4, 2019.  Although this recorded date of purchase is after Sobel's February 2019 inquiry, no one questioned this discrepancy during the administrative or writ proceedings.

[4] The February 20, 2019 determination letter was addressed to JKW Properties Inc., who was identified in HCID documents as the "owner" of the Sixth Avenue property.

6

section 1085 (which allows for a traditional writ of mandate).  SLS sought to compel the City either to reverse the HCID's 2019 determination that units A and C were not exempt as new construction or, alternatively, to allow SLS a hearing on the issue.  SLS alleged the City exceeded its jurisdiction, acted arbitrarily and capriciously, and failed to provide SLS a hearing contrary to due process before rendering the 2019 determination.  SLS made the same allegations in a cause of action for declaratory relief (Code Civ. Proc., § 1060).  The City filed an answer.

At the September 17, 2020 hearing, the trial court concluded this was not an administrative writ proceeding because SLS had failed to establish the RSO review process required an evidentiary hearing.[5]  After the hearing on the writ petition, the trial court issued a detailed written ruling, denying SLS's requested relief under a traditional writ of mandate.  The court found (1) the Sixth Street Property did not satisfy the definitional criteria of the new construction exemption, and (2) fatal deficiencies in SLS's briefs meant SLS forfeited its due process argument.  Judgment was entered on October 19, 2020.  This timely appeal followed.

## DISCUSSION

### I.    The HCID's 2019 Determination Was Correct

#### A.    Standard of Review and Burden of Proof

"When an appellate court reviews a trial court's judgment on a petition for a traditional writ of mandate [under Code of Civil Procedure section 1085], it . . . independently reviews the trial court's conclusions on questions of law, which include the interpretation of a statute and its application to undisputed facts."  (*California Public*

---

[5] Unlike an administrative writ of mandate, which addresses the validity of an administrative decision resulting from a mandatory evidentiary hearing (Code Civ. Proc., § 1094.5, subd. (a)), a traditional writ of mandate under Code of Civil Procedure section 1085 is a " 'method for compelling a public entity to perform a legal and usually ministerial duty.' "  (*Stafford v. Attending Staff Assn. of LAC + USC Medical Center* (2019) 41 Cal.App.5th 629, 636.)

*Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443; see *Tower Lane Properties v. City of Los Angeles* (2014) 224 Cal.App.4th 262, 268 [" 'Interpretation of an ordinance presents a question of law that we review de novo' "].)

In a Code of Civil Procedure section 1085 mandate proceeding, the petitioner bears the burden of proof. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1154—1155.)

### B.     Rules of Statutory Construction

"Established rules of statutory construction are equally applicable to municipal ordinances. [Citations.] As in the case of statutes, we must determine the council's intent in enacting [the relevant sections] so as to effectuate the purpose of the [RSO]." (*Chun v. Del Cid* (2019) 34 Cal.App.5th 806, 815.) " ' "In determining such intent, [we] turn[] first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.*)

"If the language of the ordinance is clear, we need not resort to extrinsic aids. [Citations.] A housing board's interpretation of a rent control ordinance is worthy of deference if it comports with the ordinance's principal goal of easing the housing shortage by encouraging the creation of new residential rentals where none existed before. [Citation.] Exemptions from rent control ordinances are construed narrowly." (*Chun v. Del Cid, supra,* 34 Cal.App.5th at p. 815.)

### C.     The Sixth Avenue Property Does Not Qualify for the New Construction Exemption

SLS relies on HCID's earlier determinations to argue the new construction exemption applied to ground-floor units A and C for which a certificate of occupancy was issued in 1986.

However, SLS mistakes both the meaning of the exemption and the underlying facts. First, as the HCID advised in its 2019 determination letter, the exemption applies only to structures for which the "first" certificate of occupancy was issued prior to 1978, regardless of whether additional certificates were issued for remodeling or additions to the structure. This interpretation is consistent with the plain language of section 151.02.6, which focuses on when the *first* certificate of occupancy was issued for the structure, not whether the structure was later added to or remodeled.

Second, the change of two single family dwellings into a four-unit apartment house never appeared in City property records as new construction. Instead, documents show the two single family dwellings were each issued a certificate of occupancy in 1949, and were "relocate[d], raise[d]," and with two "add[ed] new lower dwelling units," were "restored" as a four-unit apartment house. The certificate of occupancy issued in 1986 for this apartment house indicated it was for the "relocation" of existing buildings, not for the construction of a new building.

Third, in claiming the exemption applies, SLS erroneously focuses on the individual apartments as "presently exist[ing] independently of one another and are distinct." But the exemption on its face does not pertain to the individual apartments or housing accommodations, but rather to the entire structure in which the housing accommodations are located. Here, the structure is a four-unit apartment house which was reconfigured by prior owners combining the two units relocated from Washington Boulevard with two newly constructed units to create a four-unit apartment complex for which the first certificate of occupancy was issued in 1948. The City's treatment of the four units as one project rather than two separate two-unit dwellings is exactly how the City consistently treated the project, as a single four-unit structure, both before and after the 2019 redetermination denying the new construction exemption.

Finally, HCID's interpretation is supported by the legislative history submitted by the City, the goal of easing the housing shortage,

and the policy of narrowly construing rent control ordinances. In sum, HCID's factual findings and 2019 determination are supported by the record and consistent with the plain language of the RSO. SLS failed to meet its burden to show the Sixth Avenue property qualified for the new construction exemption.

SLS relies for support on *Olive Proration Program Committee v. Agricultural Prorate Com.* (1941) 17 Cal.2d 204, 209, in which the California Supreme Court held the Agricultural Prorate Commission was prohibited, in the absence of statutory authority, from rescinding a final decision made following a full hearing. Such is not the case here.

Next, SLS appears to argue the RSO is preempted by Civil Code section 1954.52, subdivision (a), a provision of the Costa Hawkins Rental Housing Act, which generally exempts newly constructed residential units from rent control.[6] SLS fails to develop this argument with legal analysis and citation to authority. Because SLS bears the burden to support any claim of error with reasoned argument, analysis, and citation to pertinent legal authorities, its failure to do so forfeits the issue on appeal. (*People v. Sorden* (2021) 65 Cal.App.5th 582, 603; *People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)

## II.   SLS Has Not Shown a Due Process Violation

SLS argues the 2019 determination violated procedural due process because SLS was not given notice or a hearing before the determination was made. SLS further argues it is entitled as a remedy to notice and a hearing on the application of the new construction exemption in this case.

Procedural due process applies only if there is deprivation of a constitutionally protected liberty or property interest. (*Smith v. Board*

---

[6] Specifically, Civil Code section 1954.52 provides: "(a) Notwithstanding any other provision of law, an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit about which any of the following is true: [¶] . . . [¶] (2) It has already been exempt from the residential rent control ordinance of a public entity on or before February 1, 1995, pursuant to a local exemption for newly constructed units."

*of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 326.) Here, SLS has made no factual showing of a protected property interest. SLS asserts that in purchasing the Sixth Avenue property, SLS expected the construction exemption to be renewed, and the property's value had since declined under the RSO. Whether these claims amount to a protected property interest, there is no evidence to support them. SLS argues that had the City agreed to the requested hearing, SLS would have been able to substantiate these claims with sufficient evidence. However, nothing in the record suggests SLS requested a hearing. Further, the time for SLS to produce evidence of a protected property interest was at the writ proceeding. SLS cannot now excuse its failure to develop a record at that hearing by insisting it was denied due process.

## DISPOSITION

The judgment is affirmed. The City of Los Angeles is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.


11