[No. H007243. Sixth Dist. May 31, 1991.]

SAN JOSE TEACHERS ASSOCIATION, CTA, NEA, Plaintiff and Appellant, v.
LOUIE BAROZZI, as Boardmember, etc., et al., Defendants and Respondents.

## COUNSEL

Lacroix, Schumb, Sanguinetti, Keller & Schumb and James E. Keller for Plaintiff and Appellant.

Joseph R. Symkowick and Roger D. Wolfertz as Amici Curiae on behalf of Plaintiff and Appellant.

Breon, O'Donnell, Miller, Brown & Dannis, Margaret E. O'Donnell and Nancy B. Bourne for Defendants and Respondents.

## OPINION

PREMO, J.—Appellant San Jose Teachers Association, CTA, NEA, appeals from a judgment declaring invalid the annual search requirement of section 5592, title 5, of the California Code of Regulations (hereafter Regulation 5592). We affirm.

### FACTUAL BACKGROUND

Respondent San Jose Unified School District (hereafter, District) maintains an active interscholastic athletic program in its secondary schools. In 1986, and at all relevant times thereafter, the District's policy in hiring athletic coaches has been to offer the position to teachers currently employed by the District before employing outsiders, known as "walk-ons."

In 1986, the coaching position for the Leland High School varsity baseball team was vacant. Pursuant to the District's policy, the position was first offered to currently employed teachers. When none was found suitable, the District hired Paul Ugenti, a noncertificated "walk-on." Ugenti remained as coach through the 1989-1990 school year when this action was filed. The District did not conduct an annual search for Ugenti's replacement among its certificated employees pursuant to Regulation 5592.

Appellant filed below the instant petition for a writ of mandate to compel respondents to conduct a search among its certificated employees for Ugenti's replacement, and if a current search found none, to continue conducting such search annually.

The trial court denied the petition, holding the annual search requirement of Regulation 5592 void for being inconsistent with legislative intent. This appeal ensued.

During the pendency of this appeal, the California Superintendent of Public Instruction requested permission to file an amicus curiae brief in support of appellant's position. We granted his request.

### DISCUSSION

The facts are not in dispute. The only issue in this appeal is whether Regulation 5592 is valid. We hold it is not.

■ "In determining whether a specific administrative rule falls within the coverage of a delegated power, 'the sole function of this court is to decide whether the department reasonably interpreted the legislative mandate.' [Citations.]" (*Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 914 [201 Cal.Rptr. 601, 679 P.2d 35].) "The construction given to a regulation by the officials charged with its enforcement is entitled to great weight." (*Ibid.*) However, "an administrative agency has only such authority as has been conferred on it." (*Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391-392 [211 Cal.Rptr. 758, 696 P.2d 150].) "Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void." (*Id.* at p. 391.)

Regulation 5592 reads in relevant part: "The governing board of any school district may use a noncertified temporary athletic team coach as defined in Section 5590 to supervise and instruct in interscholastic athletic programs and activities subject to the following general conditions: (a) An annual search among the district's certificated employees has not identified coaching personnel able to fulfill the district's coaching needs . . . ."

Regulation 5592 was promulgated by the State Board of Education. Appellant contends the state board's authority to adopt Regulation 5592 proceeds from Education Code sections 33352, 33031, and 35179.5.[1] We do not agree.

*Not Valid Under Sections 33352 and 33031*

Section 33352, as amended in 1986, provides in pertinent part: "The State Department of Education shall exercise general supervision over the courses of physical education in elementary and secondary schools of the state; advise school officials, school boards, and teachers in matters of physical education; and investigate the work in physical education in the public schools."

Section 33031, on the other hand, as it read in 1986, directed the State Board of Education to "adopt rules and regulations not inconsistent with the laws of this state (a) for its own government, (b) for the government of its appointees and employees, (c) for the government of the day and evening elementary schools, the day and evening secondary schools, and the technical and vocational schools of the state, and (d) for the government of other schools, excepting the University of California and the California State University, as may receive in whole or in part financial support from the state."[2]

We do not think the education department's power of general supervision over physical education courses under section 33352, and the state board's general authority to adopt implementing rules and regulations under section 33031, extend to and include regulating the hiring of athletic coaches by school districts. The authority to adopt rules and policies concerning the hiring of athletic coaches rests in the school districts themselves. This is clear from the legislative history of section 33352. (*Steffes* v. *California Interscholastic Federation* (1986) 176 Cal.App.3d 739, 750 [222 Cal.Rptr. 355].)

Prior to 1981, control over athletic activities of public schools was vested in the education department. The pre-1981 text of section 33352 then provided: "The Department of Education shall exercise general supervision over the courses of physical education in elementary and secondary schools of the state; *exercise general control over all athletic activities of the public schools*; advise school officials, school boards, and teachers in matters of

---

[1]Further statutory references are to the Education Code unless otherwise stated.

[2]Section 33031 was amended in 1990 (Stats. 1990, ch. 1372, § 185), but the amendment is irrelevant to the issue in this appeal.

physical education; and investigate the work in physical education in the public schools." (Italics added.)

However, in 1981, the phrase "exercise general control over all athletic activities of the public schools" was deleted from section 33352, and a new section containing a rephrased version of the deleted text was added to the Education Code as section 35179. As added, section 35179 reads in part: "(a) Each school district governing board shall have general control of, and be responsible for, all aspects of the interscholastic athletic policies, programs, and activities in its district, including, but not limited to, eligibility, season of sport, number of sports, personnel, and sports facilities . . . . [¶] (e) Interscholastic athletics is defined as those policies, programs, and activities which are formulated or executed in conjunction with, or in contemplation of, athletic contests between two or more schools, either public or private." (Stats. 1981, ch. 1001, § 5, pp. 3868-3869.)

We find it clear that while the 1981 amendments retained the education department's power of general supervision over physical education courses, the same amendments divested the department of control over interscholastic athletics, vesting that control instead in the governing boards of school districts.

Apparently, the Legislature initially intended the transfer of control over interscholastic athletics from the education department to the governing boards of school districts to last only until June 30, 1987. The second paragraph of section 1 of the amending 1981 statute provided that "[t]his section shall remain in effect only until June 30, 1987, and as of such date is repealed, unless a later enacted statute . . . deletes or extends such date." (Stats. 1981, ch. 1001, § 1, p. 3867.) Control over athletic activities was to be returned to the education department after June 30, 1987. (Stats. 1981, ch. 1001, § 2, p. 3867.)

However, in 1986, section 33352 was again amended, inter alia, by repealing the provision which would have returned control over athletic activities to the education department. (Stats. 1986, ch. 646, § 2, p. 2168.) Hence, as matters stood after the 1986 amendments, control over interscholastic athletics remained with the governing boards.

The Legislative Counsel's Digest to Senate Bill No. 1533 (Stats. 1986, ch. 646, pp. 207-208) is unequivocal in this regard: "Current law requires the State Department of Education to exercise general supervision over courses of physical education, advise local school officials and teachers in matters of physical education, and investigate the work in physical education in the elementary and secondary schools. Operative, June 30, 1987, the department

is also required to exercise general control over all athletic activities in the public schools. [¶] This bill would delete the authorization of the department to exercise general control over all athletic activities after June 30, 1987. [¶] Current law provides that until June 30, 1987, governing boards will have the responsibility of governing interscholastic athletic programs in their school districts . . . . [¶] This bill would extend the effective date[ ] of [this] provision[ ] to June 30, 1992." (*Ibid.*)

There is thus no question that the education department has no control over interscholastic athletic activities.

The question, however, is whether Regulation 5592 amounts to control over interscholastic athletics within the meaning of section 35179. We hold it does.

"Control" is the " '[p]ower or authority to manage, direct, superintend, restrict, regulate, . . . govern, administer, or oversee.' " (*J. G. Speirs & Co.* v. *Underwriters at Lloyd's* (1948) 84 Cal.App.2d 603, 604 [191 P.2d 124].) Undoubtedly, requiring a school district to conduct an annual search among its certificated employees before employing a noncertificated coach, or renewing or extending his employment, regulates—even restricts—the hiring prerogatives of the district and, therefore, of that district's control over its own interscholastic athletic policies, programs, and activities.

Therefore, the annual search requirement of Regulation 5592 contravenes sections 33352, 33031, and 35179, and is thus void.

*Not Valid Under Section 35179.5*

■ If the annual search requirement of Regulation 5592 cannot be upheld under sections 33352 and 33031, may it be upheld under section 35179.5? We do not think so.

Section 35179.5 provides in relevant part: "(a) The State Board of Education shall adopt rules and regulations establishing minimum qualifications for persons who are employed by school districts under subdivision (b) of Section 44919 to serve in a limited assignment supervising the athletic activities of pupils. The adopted rules and regulations shall include, but need not be limited to, minimum educational and work experience standards which will ensure that these employees are qualified to provide supervision and instruction of pupils participating in interscholastic athletic programs and activities."

Section 44919, subdivision (b), provides in turn: "Governing boards shall classify as temporary employees persons, other than substitute employees,

who are employed to serve in a limited assignment supervising athletic activities of pupils; provided, such assignment shall first be made available to teachers presently employed by the district. Service pursuant to this subdivision shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district."

As the text makes clear, section 35179.5 applies to *minimum qualifications* of temporary employees. Other aspects of employment not embraced within the meaning of "qualifications," such as duration of employment, selection process, and terms and conditions of employment, are, therefore, outside its scope. This is because section 35179.5 cannot be read to obliterate section 35179. The two must be read together and harmonized. "In the construction of a statute . . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.)

If sections 35179 and 35179.5 are read together, as they must be, it is obvious that section 35179 was intended to state the general rule, and section 35179.5, the exception. Thus read, the governing boards of school districts have "general control of . . . *all aspects* of the interscholastic athletic policies, programs, and activities in its district, including . . . *personnel*," (italics added) but the minimum qualifications of temporary employees hired under section 44919, subdivision (b), shall be determined by the State Board of Education. Because section 35179.5 is the exception, it should be strictly and narrowly construed. "It is a cardinal rule of interpretation of statutes that a proviso or exception carved out of the general enactment must be construed strictly, and one who relies on the exception must establish it within the words as well as the reason. [Citations.]" (*Telefilm, Inc.* v. *Superior Court* (1949) 33 Cal.2d 289, 297 [201 P.2d 811].)

We are not persuaded that the duration of Ugenti's employment, or the selection process in hiring an athletic coach, is "within the words as well as reason" of section 35179.5. Therefore, to the extent that Regulation 5592 requires an annual search by school districts, it is beyond the scope of section 35179.5, and thus void.

Having concluded that the annual search requirement of Regulation 5592 exceeds the rulemaking power of the state board, we need not inquire if it was reasonably necessary to effectuate the statute's purpose. ■ "If, in interpreting the statute, the court determines that the administrative action under attack has, in effect, 'alter[ed] or amend[ed] the statute or enlarge[d] or impair[ed] its scope,' it must be declared void. [Citations.] Thus, if the court concludes that the administrative action transgresses the agency's

statutory authority, it need not proceed to review the action for abuse of discretion; in such case, there is simply no discretion to abuse. [Citations.]" (*Association for Retarded Citizens* v. *Department of Developmental Services, supra,* 38 Cal.3d at p. 391.)

## DISPOSITION

The judgment is affirmed.

Capaccioli, Acting P. J., and Bamattre-Manoukian, J., concurred.