[No. A064054. First Dist., Div. One. June 9, 1994.]

MASONITE CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF MENDOCINO COUNTY, Respondent;
MENDOCINO COUNTY AIR QUALITY MANAGEMENT DISTRICT et
al., Real Parties in Interest.

COUNSEL

McCutchen, Doyle, Brown & Enersen, Barry Goode, William D. Kissinger and Trenton H. Norris for Petitioner.

No appearance for Respondent.

H. Peter Klein, County Counsel, Sandra L. Applegate, Deputy County Counsel, James R. Wheaton and Elizabeth Pritzker for Real Parties in Interest.

## OPINION

NEWSOM, J.—By this petition, Masonite Corporation (Masonite) challenges an order of the Mendocino County Superior Court dissolving a temporary restraining order and denying Masonite's request for a preliminary injunction to prevent public release of claimed trade secret information.[1] The information at issue was supplied to the Mendocino County Air Quality Management District (MCAQMD) in conjunction with Masonite's reporting obligations under the Air Toxics "Hot Spots" Information and Assessment Act of 1987 (Act). (Health & Saf. Code, § 44300 et seq.)[2] The superior court agreed with intervener, Citizens for a Healthy Ukiah (CHU), that Masonite waived its right to claim trade secret protection because it failed to set forth its claims in the exact procedural manner, on a "facility diagram" as required by section 44346 and California Code of Regulations, title 17 (Regulations), sections 93312 and 93321.

Our consideration of the procedural background takes us into a dense statutory thicket spawned by the Act, which is prefaced by an expression of legislative concern that both chemicals manufacturers and facilities and businesses that use hazardous substances might expose human populations to dangerous toxic air releases. (§ 44301, subds. (a)-(d).) More information on sources of potentially hazardous air pollutants is necessary to implement control strategies for toxic releases, and "[i]t is in the public interest to ascertain and measure the amounts and types of hazardous releases and

---

[1] Masonite filed a notice of appeal from this order (Code Civ. Proc., § 904.1, subd. (a)(6)) and in addition filed the instant petition which sought "mandate, supersedeas, or other interim relief to preserve status quo pending appeal." Under the circumstances of this case, determination of the petition necessarily required our review of the merits of the underlying appeal. (*People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 536-537 [72 Cal.Rptr. 790, 446 P.2d 790]; *Nuckolls* v. *Bank of California Nat. Assn.* (1936) 7 Cal.2d 574, 578 [61 P.2d 927]; *Deepwell Homeowners' Protective Assn.* v. *City Council* (1965) 239 Cal.App.2d 63, 66-67 [48 Cal.Rptr. 321].) To expedite our review of the merits, we issued our alternative writ and stayed the pending appeal.

We take judicial notice of the record on appeal in No. A064025, *Masonite Corporation* v. *Mendocino County Air Quality Management District et al.* (Evid. Code, §§ 450, 452, subd. (d), 459.) As our decision in this case renders that appeal moot, we have dismissed it by separate order.

[2] Unless otherwise noted, further statutory references are to the Health and Safety Code.

potentially hazardous releases from specific sources that may be exposing people to those releases, and to assess the health risks to those who are exposed." (§ 44301, subds. (g) and (h).)

The Act applies to a facility (as defined by § 44304) "which manufactures, formulates, uses, or releases" (§ 44320, subd. (a)) any of certain named and described substances. It requires a facility operator to initially prepare a "comprehensive emissions inventory plan" in accordance with guidelines prepared by the State Air Resources Board (state board or board) (§ 44340, subd. (a)), and to submit that plan to the local district, in this case MCAQMD, which may not approve it unless the plan meets specified conditions, one of which is compliance with requirements established by the state board. (§§ 44340, subd. (c), 44342.) The plan must be "designed to produce . . . a comprehensive characterization of the full range of hazardous materials that are released, or that may be released, to the surrounding air from the facility." (§ 44340, subd. (c)(2).) The plan must also provide for the collection or calculation of all "continuous, intermittent, and predictable air releases" (*ibid.*) at primary locations in a facility where each hazardous material will or may be released. (*Ibid.*) The district will approve the plan, with or without modification, and return it for revision and resubmission. (§ 44340, subd. (b).)

Within 180 days of the local district's approval, the facility operator must implement the plan and also must prepare and submit an emissions inventory report (§§ 44309, 44341) to the district.[3] The district then has 90 days to notify local city or county health department officials and the Office of Environmental Health Hazard Assessment, Department of Industrial Relations, of its findings and determinations concerning the plan. (§ 44343.)

The district is also required to categorize facilities for purposes of health risk assessment, based upon its review of the emissions inventory report (§§ 44341, 44344), following a public hearing and consultation with the Department of Health Services. (§ 44360, subd. (a).) A facility placed in the highest risk category must prepare and submit a health risk assessment[4] to the district (§§ 44360, subd. (b), 44361), which in turn submits it to the Office of Environmental Health Hazard Assessment for review, which must be completed within 180 days. (§ 44361, subd. (a).)

---

[3]Thereafter, every four years the facility operator must submit an update of its emissions inventories. (§ 44344.)

[4]" 'Health risk assessment' means a detailed comprehensive analysis prepared pursuant to Section 44361 to evaluate and predict the dispersion of hazardous substances in the environment and the potential for exposure of human populations and to assess and quantify both the individual and population wide health risks associated with those levels of exposure." (§ 44306.)

The Act also requires each local district to make an annual report describing its health risk priorities and health risk assessment program; local facilities must be ranked according to the degree of cancer risk they pose to the public; facilities posing noncancer health risks must be identified. Finally, the status of control measures must be described and the annual report disseminated to local county boards of supervisors and city councils and presented at public hearings. (§ 44363.)

The Act delegates certain rule-making authority to the state board (§ 44342) and also specifies procedures to be followed when a facility operator believes information submitted to the local district involves the release of trade secrets. (§ 44346; Gov. Code, § 6254.7.) The present controversy centers on Masonite's claims of trade secrets and on the manner in which those claims must be asserted.

Masonite submitted its emissions inventory plan and separate emissions inventory report (§§ 44340, 44341) to MCAQMD. It also submitted, as required, a health risk assessment (§ 44361) based upon the emissions rates contained in the emissions inventory report, which was incorporated as an attachment to the assessment. In each submission, Masonite provided MCAQMD with uncensored and censored versions, the latter designating in a variety of ways Masonite's trade secret claims. When notified by MCAQMD that a request had been made to inspect uncensored copies of its submissions, Masonite objected and filed this action in respondent superior court. That court initially issued a temporary restraining order but dissolved the order when it denied the preliminary injunction. This petition followed.

■ The scope of our review may be summarized as follows: "A determination to grant or deny a preliminary injunction requires the trial court to consider the likelihood that the plaintiff will prevail on the merits at trial and to weigh the interim harm to the plaintiff if the injunction is denied against the harm to the defendant if the injunction is granted. [Citation.] In such circumstance, the review on appeal is for abuse of discretion." (*Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1560-1561 [11 Cal.Rptr.2d 222].)

The sole basis for the superior court's denial of the preliminary injunction at issue here was the legal conclusion that Masonite waived its trade secret claims by failing to make them in a specified fashion on a facility diagram. The court expressly declined to reach other disputed factual questions surrounding Masonite's purported waiver and likewise did not weigh harm to Masonite against that claimed by intervener CHU.

■ We review the questions of law de novo (*Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist., supra,* 8 Cal.App.4th at p.

1561). And, as a finding of waiver was the sole basis for the challenged order, we will decline to address the remaining factual issues which are appropriately determinable by the superior court in the first instance. (*King v. Meese* (1987) 43 Cal.3d 1217, 1226-1228 [240 Cal.Rptr. 829, 743 P.2d 889]; *Department of Fish & Game, supra,* at p. 1561.)[5]

The position taken by CHU, and adopted by the trial court, is that under section 44346 and Regulations, sections 93312 and 93321, trade secret protection is available only with respect to information submitted in a "facility diagram" and therein designated by the operator as a trade secret in accordance with certain additional specifications promulgated by the state board.

Under section 44346, subdivision (a), if "an operator believes that any information required in the facility diagram specified pursuant to subdivision (b) of Section 44342 involves the release of a trade secret, the operator shall nevertheless make the disclosure to the district, and shall notify the district in writing of that belief *in the report.*" (Italics added.) Provided proper notification of a claimed trade secret is given by the operator, "the district shall protect from disclosure any trade secret designated as such by the operator, if that trade secret is not a public record." (§ 44346, subd. (b).) Section 44346 does not further describe the manner in which a trade secret must be claimed, other than that it be "in the report," which is a reference to "the emissions inventory report specified in Section 44341." (§ 44309.)

Section 44346, subdivision (a), clearly does *not* require that claimed trade secrets be set out in a facility diagram, so long as written notification of the claim is given the district in the report. Under section 44342, subdivision (b), a "facility diagram" must contain only "any nonpermitted and nonprocess sources of emissions and shall provide the necessary data to identify emission characteristics." It need not identify trade secrets. Section 44346, subdivision (b), also requires the district to "protect from disclosure any trade secret designated as such by the operator," again without limiting such protection exclusively to information set forth in the facility diagram. As we read these admittedly murky provisions, they seek to insure that, whenever the Act requires submission of information which may disclose trade secrets, a claim of privilege may be made anywhere in the report.

---

[5]CHU insists that Masonite otherwise failed to timely make some or all of its trade secret claims, that certain of the documents are already in the public domain, and that certain of the censored materials are not trade secrets. Those issues remain for respondent superior court to resolve. The order dissolving the temporary restraining order and denying the preliminary injunction applied to all trade secret claims then before the court, as variously claimed by Masonite.

The Regulations promulgated by the state board pursuant to section 44342 governing emission plans[6] and reports, set forth additional and more detailed specifications for presentation of trade secrets. Section 93311 of the Regulations requires that a plan include a "flow diagram consisting of a comprehensive schematic drawing of the process flows which affect the nature or quantity of emissions of listed substances." Section 93312 of the Regulations directs that "[i]nformation claimed to be a trade secret shall be denoted by use of a 'Black box' block on the flow diagram . . . ." According to sections 93320 and 93321, subdivision (a) of the Regulations, the report must include a "facility diagram,"[7] which in turn must contain "any specific required information which the facility chooses to designate as trade secret." Pursuant to subdivision (c) of section 93321, information "claimed to be a trade secret shall be included on the facility diagram and reference document with a box around such information, using dashed lines and a bold letter 'C' in the upper right corner of the dashed box. The designated information will be protected as a trade secret when it appears in another component of the emission inventory report only if thus denoted on the facility diagram and denoted in such other component in accordance with the provisions of this regulation."

Consequently, under the Regulations failure to designate a trade secret as specified in section 93321 results in a waiver. In contrast, section 44346, subdivisions (a) and (b) merely require a district to recognize and protect any trade secret disclosed as such "in the report." Here, Masonite designated trade secrets in the reports, but not on a facility diagram or in the specific manner prescribed by the Regulations.[8] Masonite claims that the stringent waiver provisions of the Regulations fatally conflict with the governing statutes.

"Where an administrative agency has adopted a regulation pursuant to the rulemaking authority delegated to it by the Legislature, the regulation has the force and effect of a statute. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687].) So long as the administrative agency exercises the discretion delegated to it within the scope of the controlling statute, the courts will not disturb the administrative judgment. (*Ontario Community Foundations, Inc.* v. *State Bd. of*

[6]The term "plan" used in the Act and in this opinion refers to the "emissions inventory plan which meets the conditions specified in Section 44342." (§ 44308.)

[7]A facility diagram is defined as "a diagram submitted with the inventory report that shows all points of actual or potential air release of a listed substance, including fugitive emissions." (Regs., § 93301, subd. (h).)

[8]While there was dispute below about whether Masonite's submissions included a "facility diagram" within the meaning of section 44342, subdivision (b), there is no dispute that any such diagram failed to designate any trade secrets claimed by Masonite.

*Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378].)" (*Associated Beverage Co.* v. *Board of Equalization* (1990) 224 Cal.App.3d 192, 201 [273 Cal.Rptr. 639].) "The regulation comes before us with a presumption of correctness and regularity, placing the burden of demonstrating invalidity on the one attacking it. (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 657 [128 Cal.Rptr. 881, 547 P.2d 993]; *Tahoe-Sierra Preservation Council* v. *State Water Resources Control Bd.* (1989) 210 Cal.App.3d 1421, 1439 [259 Cal.Rptr. 132].)" (*Benton* v. *Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1478 [277 Cal.Rptr. 481]; see also *Barclays Bank Internat. Ltd.* v. *Franchise Tax Bd.* (1992) 10 Cal.App.4th 1742, 1759 [14 Cal.Rptr.2d 537].)

" '. . . Where the Legislature has delegated to an administrative agency the responsibility to implement a statutory scheme through rules and regulations, the courts will interfere only where the agency has clearly overstepped its statutory authority or violated a constitutional mandate.' (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355-356 [185 Cal.Rptr. 453, 650 P.2d 328], fn. omitted.)" (*Stoneham* v. *Rushen* (1984) 156 Cal.App.3d 302, 308 [203 Cal.Rptr. 20].) " 'The scope of our review of an administrative agency's regulations is limited: we consider whether the challenged provisions are consistent and not in conflict with the enabling statute and reasonably necessary to effectuate its purpose.' (*Fox* v. *San Francisco Residential Rent etc. Bd.* (1985) 169 Cal.App.3d 651, 655 [215 Cal.Rptr. 565].) 'In enacting such rules and regulations, the Board is empowered to fill up the details of the enabling legislation. [Citation.] The court's role is to decide whether in enacting the specific rule the Board reasonably interpreted the legislative mandate.' (*Id.* at p. 656, internal quotation marks omitted.)" (*Da Vinci Group* v. *San Francisco Residential Rent etc. Bd.* (1992) 5 Cal.App.4th 24, 29-30 [6 Cal.Rptr.2d 461]; see also *San Bernardino County Sheriff's etc. Assn.* v. *Board of Supervisors* (1992) 7 Cal.App.4th 602, 612-613 [8 Cal.Rptr.2d 658].)

■ An administrative agency has no discretion to promulgate a regulation which is inconsistent with the governing statute. (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].) "A regulation is void if it was promulgated in excess of statutory authority. [Citations.]" (*Benton* v. *Board of Supervisors, supra,* 226 Cal.App.3d at p. 1479.) " 'It is fundamental in statutory construction that courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' Thus, when administrative rules or regulations 'alter or amend the statute or enlarge or impair its scope,' they 'are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]' (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d

697].)" (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29 [160 Cal.Rptr. 710, 603 P.2d 1306]; see also *San Jose Teachers Assn.* v. *Barozzi* (1991) 230 Cal.App.3d 1376, 1383 [281 Cal.Rptr. 724]; *Associated Beverage Co.* v. *Board of Equalization, supra,* 224 Cal.App.3d 192, 201.) To the extent that an administrative guideline "is inconsistent with or purports to alter its enabling statute, it must yield to the authority from which it flows. [Citation.]" (*Benton* v. *Board of Supervisors, supra,* at p. 1479.)

■ The board's administrative authority to describe the approved format for reports submitted under the Act cannot be disputed. Regulations which require trade secrets to be denoted in the "Black box" of the flow diagram of a plan and the "dashed box" of the report are reasonable and not fatally inconsistent with the enabling legislation.

Not so with the waiver provision of Regulations section 93321, subdivision (c)—which purports to grant protection to a trade secret only if it is presented in the dashed box of the facility diagram of the report with "a bold letter 'C' in the upper right corner." Section 44346, subdivision (a) permits the operator to disclose a trade secret "in the report." The obvious intent of the Legislature is to authorize a trade secret claim to be made in writing in the report, without further limitation as to manner of presentation. The board may specify the format of a report, as it has validly done, but may not contravene the legislative mandate by effectively declaring that disclosure of a trade secret in a report in accordance with section 44346, subdivision (a) may nevertheless be denied legal protection.[9]

Thus, the waiver provision found in section 93321, subdivision (c) of the regulations—and only that provision—must be declared void as inconsistent with the enabling legislation. (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd., supra,* 26 Cal.3d at p. 29; *American Airlines, Inc.* v. *County of Los Angeles* (1976) 65 Cal.App.3d 325, 332 [135 Cal.Rptr. 261].) Masonite properly asserted trade secrets in writing in the report, defeating any claim of waiver on that ground. (§ 44346, subd. (a).)

Since the underlying substantive issue in this dispute centers on the issue of what information submitted by Masonite is entitled to trade secret protection, our review necessitates an inquiry into the statutory definitions of "trade secrets" and "public records." CHU argues that, to be protected, trade secrets must be included in a facility diagram and, further, that only information classified as "data used to calculate emissions data" qualifies for

[9]However, noncompliance with the procedures specified in the Regulations may permissibly incur other reasonable sanctions specified by the board, which do not conflict with the mandate of the Legislature.

such protection. The issue is a perplexing one of statutory construction. The various and confusing provisions of section 44346 and Government Code section 6254.7 which govern the nature and content of information accorded protection as trade secrets must be interpreted to effectuate the intent of the Legislature, to the extent we are able to ascertain it. (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 297 [285 Cal.Rptr. 86, 814 P.2d 1328]; *Flowmaster, Inc.* v. *Superior Court* (1993) 16 Cal.App.4th 1019, 1027 [20 Cal.Rptr.2d 666]; *Seidler* v. *Municipal Court* (1993) 12 Cal.App.4th 1229, 1239 [16 Cal.Rptr.2d 90].) We must give effect to the manifest objectives of the legislation, which appear from the provisions considered as a whole, in light of the legislative history and public policy considerations. (*Flowmaster, Inc.*, *supra*, at p. 1028; *Agresti* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 599, 604 [7 Cal.Rptr.2d 353]; *Bingham* v. *CTS Corp.* (1991) 231 Cal.App.3d 56, 65 [282 Cal.Rptr. 161].) The statutory language "must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Documents submitted to a district by a facility operator are subject to the provisions of the California Public Records Act. (Gov. Code, §§ 6251, 6250 et seq.)[10] All of the information and plans pertaining to the nature and extent of pollution or contaminants, or required by a district (in this case MCAQMD), are public records according to Government Code section 6254.7, subdivision (a), as are pollution monitoring data under subdivision (b). "Trade secrets," as defined in subdivision (d) of Government Code section 6254.7, are "not public records."[11]

While Government Code section 6254.7 is clouded in its attempt to distinguish between pollution disclosures which are "public records" and those which are protected as "trade secrets," we consider that two categories of information are accorded clear and definitive treatment under subdivision (e): "all air pollution emission data" are public records and not entitled to protection from disclosure even if otherwise defined as trade secrets within

---

[10]Ignoring its express terms (Gov. Code, §§ 6252-6254), Masonite argues—unconvincingly—that except for Government Code section 6254.7, the Public Records Act is inapplicable to documents submitted pursuant to the Act. We conclude otherwise.

[11]Trade secrets "may include, but are not limited to, any formula, plan, pattern, process, tool, mechanism, compound, procedure, production data, or compilation of information which is not patented, which is known only to certain individuals within a commercial concern who are using it to fabricate, produce, or compound an article of trade or a service having commercial value and which gives its user an opportunity to obtain a business advantage over competitors who do not know or use it." (Gov. Code, § 6254.7, subd. (d).)

the meaning of section 6254.7, subdivision (d); but, in crucial contradistinction, all "[d]ata used to calculate emission data are *not* emission data" (italics added) and, therefore, if classifiable as trade secrets under subdivision (d) must be protected from disclosure. Finally, the directive in Government Code section 6254.7 that trade secrets are "not public records" is, we believe, a mandate to districts to treat as trade secrets any information or data which meets definition provided in subdivision (d), even if also defined as "public records" in subdivision (a)—excluding only "air pollution emission data," which must always be classified as public records.

Section 44346, subdivision (h), referring to "information collected pursuant" to chapter 3, modifies and expands the definition of public records— and conversely restricts the definition of trade secrets. Section 44346 governs the treatment of trade secrets for all information disclosed in accordance with the guidelines of sections 44340 through 44346. Subdivision (b) requires a district to "protect from disclosure any trade secret designated as such by the operator, if that trade secret is not a public record." Subdivision (h) generally gives the terms trade secret and public record "the meanings and protections given to them by Section 6254.7 . . . and Section 1060 of the Evidence Code,"[12] but adds the important proviso: "All information collected pursuant to this chapter, except for data used to calculate emissions data required in the facility diagram, shall be considered 'air pollution emission data,' for the purposes of this section." Government Code section 6254.7 treats all "air pollution emission data" as public records and all data used to calculate emission data as trade secrets. ▮ In order to achieve harmony among Government Code sections 6254.7 and 44346, give effect to section 44346 as the more specific statute, and promote the underlying objective of the Act to effectuate public disclosure of hazardous air pollutants, we conclude that all "information collected pursuant" to chapter 3 of the Act in plans and reports constitutes public records and need not be protected from disclosure, with the specific and sole exception of "data used to calculate emissions data required in the facility diagram."[13]

As to pollution and contaminant disclosures *not* collected pursuant to chapter 3—including, for instance, health risk assessments submitted under

---

[12]Evidence Code section 1060 affords the owner of a trade secret a privilege to prevent disclosure of the secret in a civil or criminal proceeding. (Evid. Code, §§ 901-903.)

[13]As we have already explained (*ante*, at p. 1051), contrary to CHU's argument, section 44346, subdivision (a) does *not* require that trade secrets be set out in a facility diagram. Thus, a distinction must be made in section 44346 between the content of information which is classified as a trade secret and the manner of presentation of a trade secret claim. While notification of a trade secret need not actually appear in the facility diagram to avoid a waiver under subdivision (a)—and is cognizable as a trade secret claim if found in writing anywhere in the report—only "data used to calculate emissions data *required* in the facility diagram" is information which may then be granted trade secret protection by subdivision (h). (Italics added.)

section 44360 et seq. and found in chapter 4 of the Act[14]—the governing statute is Government Code section 6254.7, subdivision (e), which grants trade secret status to: "[d]ata used to calculate emission data," as well as to any information that meets the definition of "trade secret" in subdivision (d) but is *not* "air pollution emission data." For all information collected pursuant to chapter 3, only data used to calculate emissions data required in the facility diagram are trade secrets under section 44346, subdivision (h); everything else is a public record.[15]

■ We further conclude that for purposes of section 44346, subdivision (h), "information collected pursuant" to chapter 3 means any disclosures collected by a district from an operator, such as Masonite, in a plan or report, or any updates thereof, as required by chapter 3 of the Act (§§ 44340 through 44346) and the accompanying current Regulations (tit. 17, §§ 93300 through 93355), but does not include extraneous or background information presented solely to explain the required disclosures.

We are not in a position to issue findings of fact, which are more appropriately left to the trial court on remand. ■ In an action for injunctive or declaratory relief brought by the facility operator pursuant to section 44346, subdivision (c), the burden is of course on the operator to demonstrate that the claimed material is a trade secret as defined in Government Code section 6254.7, subdivision (d); that the material is not "air pollution emission data" (Gov. Code, § 6254.7, subd. (e); § 44346, subd. (h)); and that the trade secret exemption applies. (Evid. Code, §§ 500, 550; see, e.g., *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 806, fn. 20 [268 Cal.Rptr. 753, 789 P.2d 934]; *Mahoney* v. *Superior Court* (1983) 142 Cal.App.3d 937, 940 [191 Cal.Rptr. 425]; *City and County of San Francisco* v. *Superior Court* (1993) 21 Cal.App.4th 1031, 1035, fn. 6 [27 Cal.Rptr.2d 201]; Gov. Code, § 6254.5; and see Civ. Code, § 3426.7, subd. (c).)

Concerned with the potential delay caused by appeal in this case, we determined to review the challenged order on petition for extraordinary writ. In issuing our peremptory writ today and returning this case to the superior court, we are mindful that the nearly impenetrable morass of factual questions remaining for resolution presents the grave prospect of further lengthy delay which may impede the paramount concern of the Act to promote

---

[14]The argument of CHU that the failure of the Act to mention "trade secrets" in chapter 4 dealing with health risk assessments denies an operator any trade secret protection for disclosures made in a health risk assessment ignores the applicable provisions of Government Code section 6254.7.

[15]At the request of Masonite and CHU, we take judicial notice (Evid. Code, §§ 451, 452) of the legislative history submitted by each to the superior court. Those materials support our analysis of the statutory scheme.

public safety. We therefore encourage respondent superior court on remand to consider whether appointment of a special master may be an appropriate course to ensure that the remaining complex substantive issues are quickly resolved. (See, e.g., Code Civ. Proc., §§ 638-645.1; Evid. Code, §§ 460, 730.)

 The superior court erred as a matter of law when it concluded that Masonite's failure to include a facility diagram document in its submissions to MCAQMD and/or to make its claims for trade secret protection on such a diagram operated as a waiver of all such claims. As that conclusion was the sole basis for the order challenged here, the order must be vacated.

Therefore, let a peremptory writ of mandate issue commanding respondent County of Mendocino Superior Court in Masonite Corporation v. Mendocino County Air Quality Management District and Citizens for a Healthy Ukiah (No. 68066) to set aside its order denying Masonite's request for a preliminary injunction, to reinstate its prior temporary restraining order and its sealing order, and to proceed with any unresolved issues in the case in a manner consistent with the views expressed in this opinion.

The stay previously imposed herein, as amended, will remain in effect until the finality of this opinion as to this court. (Cal. Rules of Court, rule 24(a).) Each party shall bear its own costs.

Strankman, P. J., and Dossee, J., concurred.

On July 8, 1994, the opinion was modified to read as printed above.